Sengchanh AMPHAVANNASOUK

v.

Dawn SIMONEAU.

No. 2003–472–Appeal.

Supreme Court of Rhode Island.

Dec. 1, 2004.

Robert Testa, for Plaintiff.

Michael J. Reed, Jr., Bellingham, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The plaintiff, Sengchanh Amphavannasouk (plaintiff), appeals from a judgment denying a motion for new trial after a jury verdict in favor of the defendant, Dawn Simoneau (defendant), in a negligence action stemming from an automobile accident. Based on testimony given by the jury foreperson, the plaintiff argues that extraneous evidence brought into deliberations by one of the jurors warrants a new trial. This case came before the Supreme Court for oral argument on September 27, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time. For the reasons indicated herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

During afternoon rush hour on January 23, 2001, plaintiff's and defendant's cars collided at the intersection of Plainfield Street and Prudence Avenue in Providence, Rhode Island. The plaintiff subsequently filed a negligence action against defendant in the Superior Court and proceeded to trial, after which a jury returned a unanimous verdict in favor of defendant. Shortly after the verdict was rendered, it came to the trial justice's attention that a juror may have introduced extraneous information into the deliberations. The trial justice appropriately conducted an in camera hearing on the record with the foreperson on the issue of juror misconduct.

Questioned first by the trial justice and then by both parties, the foreperson testified about the deliberations, focusing on the actions of one juror, referred to as "Mitch" during the hearing. The foreperson testified to two instances of possible misconduct: (1) Mitch brought toy cars into the deliberations as a visual aid; and (2) Mitch read aloud calculations, possibly based on his son's driver's training handbook, estimating braking distances of automobiles at certain speeds. Though he found that the introduction of both the cars and the calculations were "improper," the trial justice denied plaintiff's motion

for a new trial based upon this testimony. The plaintiff appeals, asserting that the trial justice erred in denying that motion.

## II

### Discussion

■ On appeal, " '[t]his Court will affirm a trial justice's decision on a motion for a new trial as long as the trial justice conducts the appropriate analysis, does not overlook or misconceive material evidence, and is not otherwise clearly wrong.' " *Cicilline v. Ford Motor Credit Co.*, 751 A.2d 1278, 1280 (R.I.2000). Thus, his or her decision " 'will be accorded great weight.' " *Graff v. Motta*, 748 A.2d 249, 255 (R.I. 2000). We apply this standard of review to determine whether any extraneous information brought into deliberations probably would influence the decision of an average reasonable juror. *State v. Hartley*, 656 A.2d 954, 962 (R.I.1995).

■ Rule 606(b) of the Rhode Island Rules of Evidence clearly establishes the proper parameters of any inquiry into the validity of a verdict. Rule 606(b) provides in pertinent part:

"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement [occurring] during the course of the jury's deliberations or to the effect of anything upon his or her or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question [of] whether extraneous prejudicial information was improperly brought to the jury's attention

or whether any outside influence was improperly brought to bear upon any juror."

This Court laid out a two-part inquiry into the presence of extraneous information in *Hartley*. The threshold question to be determined is whether extraneous information "did in fact reach the jury." *Hartley*, 656 A.2d at 960. A determination of this question in the affirmative "is not in and of itself sufficient justification for a new trial." *Id.* at 960–61. The second, and more crucial question, is what "probable effect" the extraneous information would have "on an average reasonable juror." *Id.* at 962. In *Hartley* we held the judicial inquiry into the deliberations may not consider the assertions "stating that the extraneous information did indeed cause certain jurors to change their votes" or discussions of "the jury's deliberative process, including the results of preliminary votes or the thoughts of any individual jurors." *Id.* at 961. Instead, the trial justice must focus on "the nature of the information conveyed to [the jurors] and the circumstances under which they learned of the information." *Id.* at 960.

■ The plaintiff argues on appeal that the trial justice committed clear error by failing to rely on the foreperson's testimony about a straw vote taken during deliberations, but before the extraneous information was introduced. This argument ignores the clear parameters set out in *Hartley*, which explicitly state that Rule 606(b) forbids testimony about a jury's "preliminary votes." *Id.* at 961. Any argument marshaling facts that violate *Hartley* cannot support a conclusion that the trial justice erred in his denial of a motion for a new trial.[1]

---

1. We recognize that some of the testimony presented during the post-trial hearing violated Rule 606(b) of the Rhode Island Rules of Evidence and *State v. Hartley*, 656 A.2d 954

(R.I.1995). For example, the foreman testified about the jurors' reliance on the extraneous information. Any reliance by the trial justice on improper testimony would amount

We nonetheless proceed to analyze the record to determine whether the trial justice clearly erred in denying plaintiff's motion for a new trial. Since the record of the hearing includes testimony that supports a conclusion that the toy cars and the calculations probably would not affect an average reasonable juror, we cannot hold that the trial justice committed clear error.

## A

### Toy Cars

■　According to the hearing transcript, the foreperson described Mitch's use of the toy cars as follows:

> "He got them out on the table and he began to do something maybe for twenty or thirty seconds * * *. He was just, you know, 'I brought these cars in and I brought them from home,' and half the group was like on this side, and I was, you know, I was over to the white board or the flip chart. Those cars never came out again after that."

These cars were brought to the jury's attention while they waited "for the evidence to come up from the sheriff."

On the threshold question, we agree with the finding of the trial justice that the toy cars, brought from home by one of the jurors, constituted extraneous information. On the second question, however, we hold there is evidence to support a conclusion that the presence of the toy cars probably would not affect the minds of a reasonable juror. A thirty-second display of toy cars at the outset of deliberations before the evidence and exhibits had been brought into the jury room is far from overwhelm-

ing. The defendant also argues persuasively that the use of toy cars for demonstrative purposes was akin to the jurors drawing a diagram of the accident to aid deliberations. The use of the toy cars, however improper, was relatively innocuous extraneous information that would probably not affect a reasonable juror. Therefore, we agree with the trial justice's denial of the plaintiff's motion for a new trial with respect to the toy cars.

## B

### Calculations

■　At the post-trial hearing, the foreperson described Mitch's calculations of braking distances as follows:

> "And I remember being towards the end of the group, and I remember him pulling out a piece of paper. He pulled it out of his pocket, and he said also, last night—and this is what I'm unclear; whether he said he actually sat with his son or he got his son's handbook, his driver's handbook, and he had written down some distances and stopping."

The foreperson described Mitch's manner of presenting the calculations to the jury as mere "interject[ion]" amid the deliberations and further elaborated: "He was just reading a sheet of paper. He didn't pass it around; just reading stats[,]" and "even if he did the calculations, nobody saw them. He read them." The foreperson also recalled promptly responding to Mitch's calculations by asking the other jurors: "does the group feel any of that is relevant?"

As with the toy cars, the trial justice held that these calculations, based on a

---

only to harmless error, because the evidence on the record concerning both the *nature* of and the *circumstances* under which the jurors learned of the extraneous information supports the trial justice's ultimate conclusion on the motion for new trial. To avoid any future

confusion, hearings into the validity of a verdict based on the possibility of extraneous information should be confined only to the *nature* and the *circumstances* of that information.

student driver's handbook not offered into evidence, clearly were extraneous information improperly put before the jury. We hold, however, that evidence exists to support a conclusion that these calculations probably would not affect a reasonable juror. Here "the circumstances under which [the jurors] learned of the information" is determinative. *Hartley*, 656 A.2d at 960. Though calculations of braking distances potentially could influence a reasonable juror in an automobile accident case, the fact that they were only read aloud to the jury reduces the likelihood that they would affect a reasonable juror. This is not a case in which extraneous numerical calculations had been circulated to the jury for consideration. Furthermore, the foreperson, serving in a gatekeeping role, minimized any prejudicial effect the calculations may have had on the jury by promptly challenging their relevance.

We also note that the foreperson's testimony is vague about the exact "nature" of the actual calculations: for example, what variables Mitch used in his calculations or whether he reached any conclusions. Whether the foreperson could have recalled these details at the post-trial hearing is unknown, because no one, including plaintiff, inquired into the precise nature of the calculations. Had plaintiff made such an inquiry only to have the foreperson respond that he could not remember, plaintiff could have requested that other jurors, perhaps even Mitch, be brought in to testify and further amplify the record. We have said that "*other jurors* may testify regarding the nature of the information conveyed to them and the circumstances under which they learned of the information." *Hartley*, 656 A.2d at 960. (Emphasis added.) In fact, the trial justice did raise this possibility after the foreperson's testimony, but plaintiff never made such a request on the record. Notwithstanding this failure, the foreperson's description of the circumstances surrounding the introduction of extraneous information supports the conclusion that the calculations probably would not affect an average reasonable juror.

Therefore, we hold, under Rule 606(b) and *Hartley*, the foreperson's testimony about the nature and the circumstances surrounding the introduction of both the toy cars and the calculations to the jury supported the trial justice's denial of the plaintiff's motion for a new trial.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.